# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

JASON M. DININNY,

                                        Plaintiff,

            -vs-                                                    DECISION & ORDER

SALVATORE J. TRENTANELLI, *Individually and in*                    09-CV-6561-CJS
*His Capacity as the Chief of the City of Corning*
*Police Department*, and THE CITY OF CORNING,

                                        Defendants.

---

## APPEARANCES

For Plaintiff:                          Raymond M. Schlather, Esq.
                                        LoPinto, Schlather, Solomon & Salk
                                        200 East Buffalo Street
                                        P.O. Box 353
                                        Ithaca, NY 14851
                                        (607) 273-2202

For Defendants:                         Michael P. McClaren, Esq.
                                        Ryan G. Smith, Esq.
                                        Webster Szanyi, LLP
                                        1400 Liberty Building
                                        Buffalo, NY 14202
                                        (716) 842-2800

## INTRODUCTION

**Siragusa, J.** This civil rights case is before the Court on Defendants' motion to dismiss (Docket No. 9) pursuant to Federal Rule of Civil Procedure 12. For the reasons stated below, the motion is granted in part, denied in part.

**FACTUAL BACKGROUND**

The complaint alleges that Plaintiff Jason M. Dininny ("Dininny") was a police officer with the City of Corning Police Department and president of the Crystal City Police Benevolence Association, the union representing Corning police officers. The complaint further alleges that defendant Salvatore J. Trentanelli ("Trentanelli"), chief of the Corning Police Department, retaliated against Dininny "for Dininny's appropriate and lawful participation and advocacy on behalf of the Union…." Dininny now sues for violation of his Federal constitutional rights, and further alleges State constitutional and common law claims.

**STANDARDS OF LAW**

The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp.*

*v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

In opposing Defendants' motion to dismiss, Dininny argues for the application of the Second Circuit's analysis in *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007). (Pl.'s Mem. of Law, at 7.) However, the U.S. Supreme Court, in *Ashcroft v. Iqbal*, _ U.S. _, 129 S. Ct. 1937, 1954 (2009) specifically reversed and remanded *Iqbal v. Hasty* ("The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion."). In its decision, the Supreme Court clarified the standard to apply in assessing the viability of complaints under the Federal Rules of Civil Procedure. Justice Kennedy wrote for the majority:

> "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a

complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic v. Twombly*, 550 U.S. 544], at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009).

## ANALYSIS

### *Official Capacity Claims*

Dininny has sued Trentanelli in both his official and personal capacities, as well as the City of Corning, a municipality. With regard to "official capacity", the Supreme Court has stated:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237–238 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon*, *supra*, 469 U.S., at 471-472.

*Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985). The Supreme Court also held that,

> [A] governmental entity is liable under § 1983 only when the entity itself is a "'moving force'" behind the deprivation, *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, *supra*, 436 U.S., at 694); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Monell*, *supra*; *Oklahoma City v. Tuttle*, 471 U.S. 808, 817–818 (1985); *id.*, at 827–828 (BRENNAN, J., concurring in judgment).

*Graham*, 473 U.S. at 166. Defendants contend that Dininny has not met this "policy or custom" requirement in his complaint:

> Here, because the complaint contains no allegations whatsoever concerning the existence of a policy, practice or custom of the City—let alone allegations that a policy, practice or custom caused Plaintiff's alleged constitutional deprivations—Plaintiff's § 1983 claims must be dismissed against the City

and the Chief in his official capacity. Consequently, Plaintiff fails to plead anything other than a non-actionable theory of *respondeat superior* against the City based on the Chief's alleged actions, and his claims under § 1983 must therefore be dismissed in their entirety.

(Def.s' Mem. of Law, at 18–19 (footnote omitted).) Dininny has made no argument concerning this point, and the Court finds nothing in the complaint alleging that Tretanelli's acts were pursuant to a policy or custom of the municipality. Accordingly, the claims against the City of Corning and Tretanelli in his official capacity must be dismissed.

### *Federal Constitutional Claims Under 42 U.S.C. § 1983[1]*

Dininny raises several federal constitutional claims pursuant to 42 U.S.C. § 1983. Included are allegations that Defendants violated his rights to free speech and association, his right to due process, his right to equal protection "and other rights guaranteed by the United States' Constitution." (Compl. ¶ 18.)

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993). With respect to the pleading standard for a § 1983 claim, compliance with Federal Rule of Civil Procedure 8 is required. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

---

[1]Defendants contend that "claims brought under New York's Constitution are governed by the same principles that apply under the Federal Constitution…." (Def. Mem. of Law, at 10.) Consequently, the Court conducts no separate analysis of Dininny's claims under the New York Constitution.

***First Amendment***

The Second Circuit, in the context of a civil rights case alleging a First Amendment

retaliation claim, wrote that,

> [t]o survive summary dismissal, a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.

*Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*,

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see Gill v. Pidlypchak*, 389 F.3d 379,

380 (2d Cir. 2004) (citing to *Dawes* for this principal). Here, Dininny alleges, *inter alia*, that,

> 4. …defendants engaged in an illegal course of conduct again [sic] Jason M. Dininny (hereinafter "Dininny"), including but not limited to maliciously prosecuting Dininny on unfounded charges, abuse of process in said prosecution, and otherwise, under color of law, retaliated against Dininny for his lawful and proper union leadership activities in the Crystal City Police Benevolence Association in violation of the U.S. Constitution and New York State law.…

> 12. Commencing in 2007, in retaliation for Dininny's appropriate and lawful participation and advocacy on behalf of the Union, Trentanelli, under color of law, individually and in his capacity as Chief of Police in the Corning City Police Department, engaged in an illegal, improper and malicious course of conduct directed against Dininny.

> 13. Trentanelli's actions and course of conduct, include but are not limited to the following:

> (a) Intentionally, maliciously and illegally commencing, advancing and pursuing criminal and administrative charges against Dininny, when Trentanelli knew that the charges and accusations against Dininny were baseless and false;

(b) Under color of law, intentionally, maliciously and illegally providing incorrect, misleading, improper and perjurious testimony at a Grand Jury proceeding, thereby improperly inducing the Grand Jury to indict Dininny;

(c) Illegally acquiring and procuring sealed information, documents and transcripts, in order to advance his malicious actions delineated above.

(d) Intentionally targeting Dininny for harassment and, upon information and belief, performing other and further acts, actions or courses of conduct and other retaliatory acts discoverable at trial.

(Compl. ¶¶ 4, 12–13.) It is, of course, clear that, "retaliation against public employees solely for their union activities violates the First Amendment." *Clue v. Johnson*, 179 F.3d 57, 60 (2d Cir. 1999). Here, the allegation is that Trentanelli retaliated against Dininny for his union activities and advocacy by "[i]ntentionally, maliciously and illegally commencing, advancing and pursuing criminal and administrative charges against Dininny, when Trentanelli knew that the charges and accusations against Dininny were baseless and false," and falsely testifying in the Grand Jury to obtain an indictment against him. Although *Briscoe v. LaHue*, 460 U.S. 325 (1983), grants Trentanelli absolute immunity regarding his allegedly false testimony before the grand jury, *San Vilippo v. U.S. Trust Co. of New York*, 737 F.2d 246, 256 (2d Cir. 1984), such is not the case with respect to the accusation that Trentanelli brought a false charge against Dininny. *See McCormick v. City of Lawrence, Kansas*, 253 F. Supp. 2d 1172, 1206 (D. Kan. 2003) ("Such prosecutions allegedly were undertaken without probable cause and through the use of a materially false affidavit and sworn criminal complaint. The court interprets this claim as a First Amendment retaliation claim. Like the other two claims, the court believes Mr. McCormick's allegations are sufficient to show that his constitutional rights were violated."). Accordingly, Dinninny's First Amendment

claim may go forward as it relates to his allegation that Trentanelli brought a false charge

against him in retaliation for his union activities.

***Due Process***

At oral argument, Dininny's counsel explicitly stated that he was *not* making a § 1983

claim for malicious prosecution. In his memorandum of law, however, Dininny contends that

his due process claim is based on the Fourth Amendment,[2] and refers to the discussion by

the Second Circuit of the Supreme Court case of *Albright v. Oliver*, 510 U.S. 266 (1994).

(Pl.'s Mem. of Law, at 12 ("a claim pursuant to section 1983 based on deprivation of a

liberty interest through malicious prosecution is still cognizable.").) Regardless, "it is

axiomatic that the complaint may not be amended by the briefs in opposition to a motion

to dismiss. *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 526

(S.D.N.Y.1977); *Sansom Comm. v. Lynn*, 366 F.Supp. 1271, 1278 (E.D.Pa.1973);

*Chambliss v. Coca-Cola Bottling Corp.*, 274 F.Supp. 401, 409 (E.D.Tenn.1967), *aff'd on

other grounds*, 414 F.2d 256 (6th Cir.1969), *cert. denied*, 397 U.S. 916 (1970)." *Car

Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

Although neither party has cited to *Zahrey v. Coffey*, 221 F.3d 342, 344 (2d Cir.

2000), in that decision, the Court of Appeals wrote, "[w]e hold that there is a constitutional

right not to be deprived of liberty as a result of the fabrication of evidence by a government

officer acting in an investigatory capacity, at least where the officer foresees that he himself

will use the evidence with a resulting deprivation of liberty." The complaint alleges that as

---

[2]Dininny alleged in his First Claim that he was deprived of his constitutional rights "to free speech and association, the right to due process, the right to equal protection and other rights guaranteed by the United States' Constitution." (Compl. ¶ 18.) He argues that his Fourth Amendment theory is supported by the "other rights" allegation in his complaint.

a result of Trentanelli's actions, which include an allegation that he "[i]ntentionally, maliciously and illegally commenc[ed], advanc[ed] and pursu[ed] [false] criminal and administrative charges against Dininny" (Compl. ¶ 13(a)), he has suffered, *inter alia*, a "deprivation of liberty." (Compl. ¶ 19.) Consequently, Dininny, in his complaint sufficiently alleges a cause of action for a due process violation through the illegal deprivation of his liberty.

### *Equal Protection*

Dininny alleges in his complaint that he was deprived of equal protection under the Constitution, and argues in his memorandum of law that: "he has been treated differently from other police officers because of his leadership activities in the Union—that is, he has been subjected to a baseless criminal prosecution and an administrative disciplinary proceeding." (Pl.'s Mem. of Law, at 13.) In order to plead a facially valid equal protection claim, Dininny must allege: (1) that he has been treated differently from similarly-situated officers, and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race, religion, national origin, or some other protected right. *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008). "To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare [him]self must be similarly situated in all material respects." *Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir. 1997); *see Latrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (*Shumway* "similarly situated" language employed in Equal Protection claim).

The complaint fails to raise a plausible claim of a violation of Dininny's Equal Protection right. It does not allege with whom Dininny was similarly situated in all material respects, or that he was treated differently from anyone similarly situated, or the consti-

tutionally impermissible basis of the alleged discrimination.

With regard to Dininny's "class of one" Equal Protection claim, the Supreme Court

wrote in *Willowbrook v. Olech*, 528 U.S. 562 (2000):

> Our cases have recognized successful equal protection claims brought by a
> "class of one," where the plaintiff alleges that she has been intentionally
> treated differently from others similarly situated and that there is no rational
> basis for the difference in treatment…. In so doing, we have explained that
> "'the purpose of the equal protection clause of the Fourteenth Amendment
> is to secure every person within the State's jurisdiction against intentional and
> arbitrary discrimination, whether occasioned by express terms of a statute or
> by its improper execution through duly constituted agents.'" *Sioux City Bridge
> Co.*, *supra*, at 445 (quoting *Sunday Lake Iron Co. v. Township of Wakefield*,
> 247 U.S. 350, 352 (1918)).

*Id*. at 564 (some citations omitted). Notwithstanding the Supreme Court's clear language

in *Engquist v. Or. Dep't of Agric.*, 128 S. Ct. 2146, 2151 (2008), that "the class-of-one

theory of equal protection does not apply in the public employment context," Dininny

contends that language does not preclude a class of one theory here. (Pl's Mem. of Law,

at 13–14.) He relies on the following language from *Engquist* to argue that a class of one

theory of Equal Protection is viable here:

> First, although government employees do not lose their constitutional rights
> when they accept their positions, those rights must be balanced against the
> realities of the employment context. Second, in striking the appropriate
> balance, we consider whether the asserted employee right implicates the
> basic concerns of the relevant constitutional provision, or whether the
> claimed right can more readily give way to the requirements of the
> government as employer. With these principles in mind, we come to the
> question whether a class-of-one theory of equal protection is cognizable in
> the public employment context.

*Engquist*, 128 S. Ct. at 2152. Even if this Court accepted the argument that *Engquist* does

not preclude a class of one claim here, Dininny's complaint has not plead the "others

similarly situated."

***Personal Involvement***

Trentanelli contends that "Plaintiff's § 1983 claims for malicious prosecution, false arrest and abuse of process should be dismissed because the complaint fails to provide any specificity as to what personal involvement, if any, that the Chief had in these alleged constitutional violations." (Def.s' Mem. of Law, at 19.) As described above, the complaint alleges that Trentanelli commenced and advanced false criminal and administrative charges against Dininny; testified against Dininny falsely in the grand jury; acquired sealed information contrary to State law; and harassed him. (Compl. ¶¶ 4, 12–13.) The Court finds these allegations are sufficient to withstand a motion to dismiss. Here, unlike the case relied upon by Trentanelli, *Alvarez v. Doe*, No. 03 Civ. 7740 JSR JCF, 2004 WL 1874972 (S.D.N.Y. Aug. 13, 2004), Dininny is not suing the police commissioner for violations of his rights by agents of the police commissioner. In other words, Dininny is not relying on *respondeat superior* to impute liability to Trentanelli—he is accusing Trentanelli of *directly* committing the alleged unconstitutional acts against him.

***New York General Municipal Law***

Defendants contend that the claims against the City of Corning and Tretanelli in his official capacity must be dismissed for failure to comply with the requirements of New York General Municipal Law § 50-h. Since the Court has dismissed those claims for failure to plead that the alleged violations occurred pursuant to a policy or custom, it need not address Defendants' arguments under New York General Municipal Law.

*False Arrest*

Dininny concedes that the cause of action alleging false arrest should be dismissed for failure to comply with New York General Municipal Law § 50-e. Accordingly, Defendants' motion to dismiss the third cause of action is granted. (Pl.'s Mem. of Law, at 2, n.1 ("Plaintiff concedes that the Third Cause of Action of the Complaint (False Arrest) is subject to dismissal on the basis that the Notice of Claim, as it respects that Cause of Action, was not filed within ninety days of the accrual of that particular claim.").)

*Malicious Prosecution*

Defendants contend that Dininny's pleading is insufficient under New York law in that defendant Trentanelli did not personally prosecute Dininny in the underlying criminal action, and the complaint contains no allegation that the Chief regularly issued process against Dininny, nor any allegation describing a "collateral objective" that the Chief allegedly sought to accomplish.

> To establish a cause of action for malicious prosecution, plaintiff is required to show "four elements: (1) the initiation of a criminal proceeding by the defendant against the plaintiff, (2) termination of the proceeding in favor of the accused, (3) lack of probable cause, and (4) malice" (*Brown v Sears Roebuck & Co.*, 297 AD2d 205, 208, 746 NYS2d 141 [2002]).

*Weiss v. Hotung*, 26 A.D.3d 855, 856 (N.Y. App. Div. 4th Dep't 2006). As to the first requirement,

> [a] malicious prosecution defendant must do more than merely report a crime to the police and cooperate in its prosecution; rather, he or she must play an active role in the prosecution, such as by encouraging or importuning the authorities to act (*Brown* [*v. Sears Roebuck & Co.*, 297 A.D.2d 205] at 209 [(N.Y. App. Div. 1st Dept. 2002)]). "[A] defendant may be said to have initiated a criminal proceeding by providing false evidence to the police or withholding evidence that might affect the determination by the police to make an arrest" (*id*. at 210).

*Maskantz v. Hayes*, 39 A.D.3d 211, 213 (N.Y. App. Div. 1st Dep't 2007). Here, as indicated above, the complaint alleges that Trentanelli, "Intentionally, maliciously and illegally commenc[ed], advanc[ed] and pursu[ed] criminal and administrative charges against Dininny, when Trentanelli knew that the charges and accusations against Dininny were baseless and false…" and "Trentanelli, acting individually, and/or in his capacity as Chief of Police and/or on behalf of, or in concert with, the City of Corning, wrongfully set in motion judicial process against the plaintiff so as to subject him to an unjustifiable criminal prosecution, or maliciously caused the same." (Compl. ¶¶ 13, 32.) These allegations are sufficient to meet the first element.

As to the second reqirement, the complaint sufficiently alleges the termination of the prosecution in favor of the accused. (Compl. ¶ 15 ("All criminal charges against Dininny were finally and fully disposed upon a jury verdict of acquittal and related judgments of dismissal made and entered in the Steuben County Court on November 6, 2008.").)

As to the third requirement, Dininny alleges that, "[a]t all times pertinent herein, the instant criminal prosecution was without probable cause." (Compl. ¶ 33.) Dininny further alleged that, "[u]nder color of law, [Defendant Trentanelli] intentionally, maliciously and illegally provid[ed] incorrect, misleading, improper and perjurious testimony at a Grand Jury proceeding, thereby improperly inducing the Grand Jury to indict Dininny…." (Compl. ¶ 13(b).)

Finally, as to the fourth requirement, Dininny alleges malice (Compl. ¶ 34 ("At all times pertinent herein, Trentanelli and the defendants acted intentionally, willfully and maliciously.") and Compl. ¶ 12 "Commencing in 2007, in retaliation for Dininny's

appropriate and lawful participation and advocacy on behalf of the Union, Trentanelli, under color of law, individually and in his capacity as Chief of Police in the Corning City Police Department, engaged in an illegal, improper and malicious course of conduct directed against Dininny.").) Therefore, the Court concludes that the allegations of malicious prosecution are sufficient to withstand a motion to dismiss pursuant to Rule 12(b)(6).

### *Abuse of Process*

Dininny's fourth claim is for the State common law tort of abuse of process. The elements of that tort were described by the New York Court of Appeals:

> First, there must be regularly issued process, civil or criminal, compelling the performance or forebearance of some prescribed act. Next, the person activating the process must be moved by a purpose to do harm without that which has been traditionally described as economic or social excuse or justification (*cf. James v Board of Educ. of Cent. School Dist. No. 1 of Towns of Orangetown & Clarkstown*, 37 NY2d 891). Lastly, defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process.

*Board of Ed. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 38 N.Y.2d 397, 403 (1975). The complaint at issue here contains no allegation that Trentanelli sought "some collateral advantage or corresponding determent to the plaintiff which is outside the legitimate ends of the process." Consequently, this claim must be dismissed.

### *Qualified Immunity*

Trentanelli argues for the application of qualified immunity to shield him from liability for allegedly violating Dininny's constitutional rights. The Court cannot address its application at this stage of the litigation, however.

> [B]ecause qualified immunity is an affirmative defense, it is incumbent upon the defendant to plead, and adequately develop, a qualified immunity defense during pretrial proceedings so that the trial court can determine which claims, if any, may be disposed of by summary judgment, or, at least, which facts material to the qualified immunity defense must be presented to the jury to determine its applicability once the case has gone to trial.

*Blissett v. Coughlin*, 66 F.3d 531, 538 (2d Cir. 1995).

### Punitive Damages

In *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), the Supreme Court held that municipalities are immune from punitive damages under § 1983. Thus, even if the Court had not dismissed the lawsuit against the City of Corning and Tretenalli in his official capacity, punitive damages would not be available from the municipaity, were it to be found liable.

### Judicial Estoppel

In a supplemental memorandum of law, and affidavit, Defendants state that, "On May 29, 2010, arbitrator Thomas N. Rinaldo issued his Findings and Recommendations in the grievance filed by Dininny. Dininny prevailed in the arbitration proceeding after arguing that the charges against him were fabricated by Lt. Spaulding for personal and political reasons." (Def.s' Suppl. Mem. of Law, at 1.) Defendants argue for the application of judicial estoppel based on this information and the fact that in this lawsuit,

> Dininny alleges that the charges were initiated by Chief Trentanelli as retaliation for Dininny's union activity. Dininny's position in the arbitration is inconsistent with the allegations in the Complaint, and he must be judicially stopped from asserting claims against Chief Trentanelli that are inconsistent with the positions that he took during the arbitration.

(*Id*.)

As the district court explained in *Mohammed v. Marriott Intern., Inc.*, 944 F. Supp. 277 (S.D.N.Y. 1996):

> "The doctrine of judicial estoppel  prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." *Bates v. Long Island R.R.*, 997 F.2d 1028, 1037 (2d Cir.), *cert. denied*, 510 U.S. 992 (1993). Judicial estoppel serves two objectives: (1) preserving the sanctity of the oath by requiring consistency in sworn positions; and (2) protecting judicial integrity by avoiding inconsistent results in two proceedings. *Id*. at 1038…. Two conditions must be satisfied before a court will apply judicial estoppel: (1) the party against whom estoppel is asserted must have argued an inconsistent position in a prior proceeding; and (2) the prior position must have been adopted by the court in the prior proceeding.

*Id*. at 280–81. First, the Court is constrained on a motion pursuant to Rule 12(b)(6) to the four corners of the complaint and any documents attached thereto, or in the possession of the plaintiff and necessarily relied upon when the complaint was drafted. *See Global Network Commc'ns v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006); *Henschke v. New York Hosp.-Cornell Med. Ctr.*, 821 F.Supp. 166, 169 (S.D.N.Y. 1993). The complaint here was filed on November 5, 2009, more than twenty-nine weeks *before* the arbitration ruling.  Thus, even if the Court were to view information from outside the complaint, it is unlikely that it would apply judicial estoppel. Since the supposedly inconsistent position advanced before this Court was posited weeks before the position adopted by the arbitrator, it would appear that the second condition, that the prior position *be adopted* by the court in a prior proceeding, is not met. Nevertheless, the issue is not properly before the Court since the extrinsic information required to properly adjudicate the matter is outside the pleadings.

***Leave to Amend***

In his memorandum of law,[3] Dininny requests "leave to submit an Amended Complaint if necessary." (Pl.'s Mem. of Law, at 16.) Ordinarily, a movant's failure to submit a proposed amended complaint constitutes sufficient grounds to deny a motion to amend. *See, e.g., La Barbera v. Ferran Enterprises, Inc.*, No. Civ. 05-2678, 2009 U.S. Dist. LEXIS 9615, at *7, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009) ("In order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and the opposing party can understand the exact changes sought") (internal quotation marks omitted); *Team Air Express, Inc. v. A. Heffco Technologies, Inc.*, No. 06 CV 2742, 2008 U.S. Dist. LEXIS 59892, at *30, 2008 WL 3165892, at *10 n. 10 (E.D.N.Y. Aug. 6, 2008) (stating that "the Court could recommend denial of the motion [for leave to amend] solely on the basis of plaintiff's failure to submit a proposed amended Complaint," but denied the motion on the merits, as futile). If the movant's papers adequately explain the basis for, and nature of, the proposed amendment, however, the failure to attach a proposed amended complaint to the motion is not necessarily fatal. *Segatt v. GSI Holding Corp.*, No. 07 Civ. 11413, 2008 U. S. Dist. LEXIS 93207, at * 10 (S.D.N.Y. Nov. 3, 2008). Dininny has not shown at all what he seeks to add to his complaint, making it impossible for the Court to determine whether any proposed amendment would be futile. Accordingly, the Court denies the request at this time with leave to renew should Dininny choose to do so.

---

[3]Contrary to Federal Rule of Civil Procedure 7, Dininny failed to make a motion in writing, and, instead, made an oral application for leave to amend during the oral argument of the motion to dismiss.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the following claims is granted: (1) all claims against the City of Corning; (2) all claims against Trentanelli in his *official* capacity; (3) the Equal Protection Federal Constitutional claim; (4) the State common law false arrest claim; and (5) the State common law abuse of process claim. The following claims may go forward against Trentanelli in his personal capacity as plead: (1) the Federal First Amendment retaliation claim; (2) the Federal Due Process claim; and (3) the State common law malicious prosecution claim.

IT IS SO ORDERED.

Dated:  December 15, 2010
        Rochester, New York

ENTER:

*/s/ Charles J. Siragusa*
CHARLES J.  SIRAGUSA
United States District Judge